## A08A1339. SHABAZZ v. THE STATE.
### (667 SE2d 414)

JOHNSON, Presiding Judge.

A jury found Waleed Shabazz guilty of armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Shabazz appeals, challenging the sufficiency of the evidence. He also argues that the trial court erred in admitting identification evidence, and he claims that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

1. In reviewing Shabazz's sufficiency challenge, we construe the evidence favorably to support the jury's verdict.[1] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find Shabazz guilty beyond a reasonable doubt.[2]

So viewed, the evidence shows that on October 24, 2006, two men entered Sonny's meat market and walked around the store for several minutes. The taller of the two men was dressed in a green, hooded jacket with the hood on his head. The shorter man picked up a bag of potato chips, and both approached the cash register, where Sherry Cook was working. As Cook rang up the potato chips, the taller man pulled out a gun and demanded money. After Cook gave the men money from the cash register, they ran from the store.

Cook reported the robbery to police. The following day, Investigator Roger Lindsay developed a photographic lineup that included Shabazz's picture. Cook reviewed the lineup and identified Shabazz as the taller robber who, the evidence shows, held the gun.

---

[1] *Justice v. State*, 263 Ga. App. 858 (589 SE2d 624) (2003).
[2] Id.

Lindsay interviewed Cook a second time on November 8, 2006, and she again identified Shabazz from the photographic array. Cook also identified Shabazz as the robber at trial. In addition, the state offered evidence that Shabazz had previously been convicted of felony obstruction of a law enforcement officer.

Given Cook's testimony that Shabazz robbed her at gunpoint, as well as the evidence of Shabazz's past felony conviction, the jury was authorized to find him guilty of armed robbery, possessing a firearm during the commission of a crime, and possessing a firearm as a convicted felon. Although Shabazz now challenges Cook's identification as unreliable and argues that she provided inconsistent testimony, any evidentiary conflicts were for the jury — not this Court — to resolve.[3] As we have found, "determination of a witness's credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury."[4] The evidence, therefore, was sufficient.[5]

2. Shabazz also claims that the trial court erred in admitting evidence of Cook's pre-trial and in-court identifications. We disagree.

"We will set aside a conviction that is based on a pretrial identification by photograph and a subsequent identification at trial only if the photographic lineup was so impermissibly suggestive that there exists a very substantial likelihood of irreparable misidentification."[6] We need not reach the issue of irreparable misidentification unless the photographic lineup is impermissibly suggestive.[7] An impermissibly suggestive procedure results if "it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'This is our suspect.' "[8]

The record shows no impermissible suggestion here. Investigator Lindsay included Shabazz's picture in the photographic lineup after receiving an anonymous tip. The array consisted of six photographs depicting men of the same race with similar hair cuts and facial hair. The photographs appear to have been taken at the same angle and from the same distance, and no one picture stands out from the others.

---

[3] Id. at 859-860.

[4] (Citation and punctuation omitted.) Id. at 859; see also *Lawrence v. State*, 267 Ga. App. 515, 516-517 (1) (600 SE2d 444) (2004) ("Identity is a question for the trier of fact, and where a witness identifies a defendant, the credibility of the witness making the identification is not to be decided by this Court.").

[5] See id.; *Justice*, supra.

[6] (Citations omitted.) *Watley v. State*, 281 Ga. App. 244, 245 (1) (635 SE2d 857) (2006).

[7] Id.

[8] (Citations omitted.) Id.

When Lindsay showed the lineup to Cook, he asked her to examine each picture and tell him whether she recognized anyone. He made clear that the robber "may or may not be in [the array] and she could answer either way." In addition, he did not identify any of the men in the photographs by name or suggest that she pick anyone out of the lineup.

On appeal, Shabazz argues that the array was impermissibly suggestive because his picture was included based on an unverified, anonymous tip. Shabazz, however, has cited no authority to support his apparent claim that the police cannot use an anonymous tip to prepare a lineup. Moreover, he has not shown that Cook knew about the tip before she saw the lineup or that the tip influenced her selection in any way. Simply put, we fail to see how use of the anonymous tip led Cook to identify Shabazz.[9]

Shabazz further argues that Cook gave varying descriptions of the robber, was uncertain in her identification, and that his presence in the meat market was not corroborated by physical evidence. Even if true, however, these factors prove nothing with respect to whether the lineup procedure was impermissibly suggestive. At best, they relate to the issue of irreparable misidentification, which we need not address absent an impermissibly suggestive procedure.[10]

Finally, Shabazz complains that Lindsay told Cook during her November 8, 2006 interview that Shabazz was in custody on other charges. But the record shows that Lindsay made this statement *after* Cook identified Shabazz from the photographic lineup that day. Although the information made Cook "feel better" about her identification, she did not view Lindsay's statement as confirmation that she had picked the "right individual."

Because Lindsay gave this information to Cook following her identification, it did not impact the photographic identification procedure. Shabazz also argues, however, that by revealing the information, Lindsay tainted Cook's in-court identification. Again, we disagree.

As noted above, Lindsay only told Cook that Shabazz had been arrested on other charges. He did not indicate that she had identified the "right guy," a practice we have frowned upon in other cases.[11] Moreover, even a "right guy" reference will not taint a subsequent in-court identification if that identification "does not depend upon the prior identification but has an independent source."[12]

---

[9] See id.

[10] See *Beals v. State*, 288 Ga. App. 815, 817-818 (3) (655 SE2d 687) (2007) (discussing factors considered in evaluating likelihood of irreparable misidentification).

[11] See *Cridiso v. State*, 200 Ga. App. 342, 344 (4) (408 SE2d 153) (1991).

[12] (Citations omitted.) Id.

When asked how she recognized Shabazz at trial, Cook testified unequivocally: "Because he's the one that robbed me." The robbery occurred during daylight hours, and Cook saw the robbers when they first entered the meat market, as well as several other times while they walked through the store. Cook was only two feet from them during the actual robbery at the cash register, which lasted for approximately one minute, and she looked at their faces.

Given these circumstances, the trial court did not err in refusing to exclude the in-court identification evidence.[13] Neither that identification, nor Cook's pre-trial identification, was tainted.

3. Finally, Shabazz asserts that he received ineffective assistance of counsel at trial. To succeed on this claim, he must demonstrate that counsel's performance was deficient and that the deficiency so prejudiced his defense that, absent counsel's errors, the outcome of the trial likely would have been different.[14]

(a) Shabazz first argues that trial counsel should have had his mental competency evaluated. The record shows that counsel considered requesting a mental evaluation, but ultimately decided that it was not necessary. Explaining this decision at the hearing on Shabazz's motion for new trial, counsel noted that, shortly before trial, Shabazz had been evaluated in connection with another case and found competent. Counsel also asked a forensic evaluator to meet, with Shabazz and advise whether she should seek a new evaluation. According to counsel, the evaluator concluded that Shabazz had personality problems, not mental health concerns, and would be found competent. Counsel further testified that although Shabazz's behavior was odd, he was able to communicate and discuss trial issues with her.

Shabazz has not shown that counsel unreasonably relied on the prior competency evaluation or the advice of the forensic evaluator. He also offered no evidence that counsel's failure to have him evaluated prejudiced the defense. Although Shabazz apparently spent time in a mental facility, he refused to provide details about this hospitalization, and he did not present any other evidence that he was, in fact, incompetent.

Shabazz failed to demonstrate that his competency should have been raised at trial or that, if it had been, the outcome of the proceeding would have been different. It follows that he cannot establish ineffective assistance on this basis.[15]

[13] See id.; *State v. Willis*, 218 Ga. App. 402, 403 (2) (461 SE2d 576) (1995).

[14] See *Felder v. State*, 286 Ga. App. 271, 276 (5) (648 SE2d 753) (2007).

[15] See *Jennings v. State*, 282 Ga. 679, 680 (2) (653 SE2d 17) (2007); see also *Domingues v. State*, 277 Ga. 373, 374-375 (2) (589 SE2d 102) (2003) (no ineffective assistance where defendant failed to show that counsel unreasonably relied on competency evaluation).

(b) Shabazz also claims that counsel was ineffective in failing to call three witnesses who, he contends, would have provided an alibi defense. Trial counsel testified, however, that she interviewed these individuals and determined that their testimony would not be helpful. Tactical decisions as to which defense witnesses to call are matters of trial strategy that generally do not amount to ineffective assistance of counsel.[16]

Moreover, these witnesses did not testify at the new trial hearing. Despite his claim of alibi, Shabazz has offered no evidence that the witnesses would have provided relevant or helpful testimony. He thus cannot show prejudice or demonstrate ineffective assistance.[17]

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 16, 2008.

*John G. Edwards*, for appellant.
*J. David Miller, District Attorney, Brian A. McDaniel, Assistant District Attorney*, for appellee.

