A07A0750. FELDER v. THE STATE.
(648 SE2d 753)

ELLINGTON, Judge.

A Newton County jury found Reginald Felder guilty beyond a reasonable doubt of bribery, OCGA § 16-10-2. He appeals from the denial of his motion for new trial, contending that the trial court erred in improperly restricting his cross-examination of a witness, in admitting similar transaction evidence, and in failing to give a jury instruction. He also claims he received ineffective assistance of counsel and argues that there was insufficient evidence to support his conviction. Finding no error, we affirm.

1. In attacking the sufficiency of the evidence, Felder contends that the evidence was conflicting and that some of the witnesses were not credible. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State,* 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

---

In 2003, Felder was employed as a detention officer at the Newton County Detention Center ("the jail"). In early April 2003, an inmate, R. H.,[1] was considering escaping from the jail. R. H. decided that he needed a handcuff key, so he approached Felder and asked Felder to get him a key. After some negotiations, Felder and R. H. agreed that R. H. would pay Felder $100 for the key. R. H. arranged for a friend to hide two $50 bills in a greeting card and mail it to him (R. H.) at the jail. A few days after R. H. received the money, Felder and a jail trustee were passing out extra sandwiches to the inmates on the cellblock. When the trustee gave R. H. a ham sandwich, R. H. initially just put it down on a table. Shortly thereafter, Felder came to R. H.'s cell and asked him if he liked the sandwich. R. H. realized that he was supposed to look inside the sandwich and, when he did, he found a handcuff key. R. H. put the key on a chain around his neck and hid it behind his cross. About 45 minutes later, Felder took R. H. to the showers. R. H. gave Felder a dirty towel with the $100 hidden inside. Felder left briefly and, when he returned, he gave R. H. a clean towel.

A few weeks later, R. H. told a jail shift supervisor that he had a handcuff key and that he thought the authorities would want to get it away from the inmate population. He did not tell the supervisor who gave him the key. According to R. H., he decided to report the key because he wanted to be a jail trustee and he thought that it would help him get out of an overcrowded jail cell. R. H. testified that he thought the authorities would appreciate getting the key away from the inmates and that he had not intended to tell the authorities who provided the key. Within a couple of days after R. H. gave the supervisor the key, however, investigators interviewed him and he told them how he got the key. R. H. testified that he had not told anyone else that he had a handcuff key before he approached the jail supervisor. In addition to this evidence, R. H.'s testimony was corroborated by another inmate, C. J., who testified that, while he was in a nearby cell, he overheard R. H. ask Felder about getting him a handcuff key and heard the two men discuss money.

Under OCGA § 16-10-2, a county jail employee commits bribery when he "directly or indirectly solicits, receives, accepts, or agrees to receive a thing of value by inducing the reasonable belief that the giving of the thing will influence his or her performance or failure to perform any official action." The evidence presented in this case, viewed in favor of the jury's verdict, was sufficient for a rational

---

[1] Because the inmates who testified in this case are still incarcerated and testified in a trial involving charges against a jail employee, we will refer to them by their initials.

factfinder to find Felder guilty beyond a reasonable doubt of bribery. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

2. Felder argues that the trial court improperly admitted similar transaction evidence at trial. He claims that he did not receive timely notice of the State's intent to present such evidence and that neither the State nor the court identified proper purposes for the admission of the evidence.

(a) Uniform Superior Court Rule 31.1 provides that similar transaction notices must be filed at least ten days before trial unless that time is shortened or lengthened by the judge. Under this rule, the judge has the discretion to admit similar transaction evidence without the requisite ten-day notice, and this Court will not interfere with such discretion absent abuse. *Bryant v. State*, 226 Ga. App. 135, 138 (3) (a) (486 SE2d 374) (1997).

The record shows that, on August 2, 2004, over two months before trial in this case, the State filed a notice of intent to introduce evidence of a similar transaction in which Felder provided an inmate, J. D., with contraband (cigarettes) in exchange for a bribe. The next day, the court conducted a similar transaction hearing during which that incident was discussed; Felder was represented by counsel.[2] During the same hearing, the State notified Felder's counsel that it intended to present evidence that, within two days of the offense at issue in this case, Felder provided another inmate, M. B., with contraband. Then, during a hearing outside the presence of the jury on the second day of trial, Felder's trial counsel complained that he had not received adequate notice of the similar transactions and argued that they should be excluded as prejudicial. The court admitted both similar transactions after finding that the State had given adequate notice to Felder's previous counsel and that Felder was not harmed by the alleged lack of formal notice to his trial counsel. During the motion for new trial hearing, trial counsel acknowledged that the State had given notice of the similar transactions to Felder's previous counsel.

The record also shows that trial counsel interviewed both of the State's similar transaction witnesses before they testified. Notably, both of the inmates involved in the transactions, J. D. and M. B., testified at trial and specifically denied that Felder provided them with contraband. In fact, Felder's counsel admitted during the new trial hearing that J. D.'s testimony regarding the similar transaction allegedly involving him benefitted Felder's case.

---

[2] Felder subsequently fired his counsel two days before trial and, after securing a continuance, hired another attorney, who represented him at the October 2004 trial.

Under the circumstances, Felder has not shown that the State failed to give timely notice of the similar transactions or that, even if it did, he was prejudiced by the delayed notice. Therefore, we conclude the court did not abuse its discretion in admitting the evidence. *Bryant v. State*, 226 Ga. App. at 138 (3) (a); see *Quinn v. State*, 221 Ga. App. 399, 403 (4) (471 SE2d 337) (1996) (court did not abuse its discretion in allowing similar transaction evidence, even though the State did not give notice until after the trial began).

(b) As for Felder's allegation that neither the State nor the court identified permissible purposes for the similar transaction, the record shows that Felder failed to raise this alleged error at trial. Therefore, this argument has been waived. *Braithwaite v. State*, 275 Ga. 884, 889 (10) (572 SE2d 612) (2002).

3. Felder contends the trial court improperly restricted his cross-examination of four witnesses. "Although a defendant is entitled to a thorough and sifting cross-examination as to all relevant issues, the trial court, in determining the scope of relevant cross-examination, has a broad discretion." (Citation omitted.) *Johnson v. State*, 270 Ga. 234, 235 (2) (507 SE2d 737) (1998). In this case, Felder has failed to show that the court abused its discretion by excluding relevant evidence.

(a) Felder complains that the court did not allow a shift supervisor of the jail to testify regarding his knowledge of the general bad character of R. H., the inmate who received the key from Felder. See OCGA § 24-9-84 (impeaching the credibility of a witness by showing the witness had a general reputation in the community of having a bad character as to truthfulness). The record shows, however, that R. H. had not testified at that point, so impeachment in this manner was improper and any inquiry into his veracity was irrelevant. Moreover, Felder questioned the supervisor on this issue, and the supervisor testified that he did not know about R. H.'s general character or reputation within the jail community. Therefore, Felder's argument lacks merit.

(b) Felder sought to impeach R. H. by introducing evidence to show that R. H.'s alleged medication use and mental problems may have compromised his memory of the events leading to the charges in this case. Outside the presence of the jury, Felder cross-examined R. H. at length on this issue. R. H. testified that neither the medications nor his mental disorder affected his memory or his ability to testify and that he had a clear recollection of the incident at issue in this case. Felder presented no evidence to the contrary. Therefore, absent any evidence that R. H.'s memory had been compromised, the court properly found that this area of inquiry was irrelevant. There was no error.

(c) Felder argues that the court improperly refused to allow counsel to question M. B., a similar transaction witness who was called by the defense, about why the State had released him from its subpoena during trial. See Division 2 (a), supra. But when the court asked counsel to explain why that information was relevant, he stated only that it "goes to the heart of the similar transaction." Felder did not raise this issue in his motion for new trial. On appeal, Felder has not cited to any other explanation or evidence to show the relevancy of his proposed questioning, nor does he cite to any authority to show that the court abused its discretion in restricting this line of inquiry. We find no abuse of discretion.

(d) As to the fourth witness, Felder contends that the court improperly refused to allow counsel to cross-examine a similar transaction witness, J. D., about the fact that the State gave him use and derivative use immunity in exchange for his testimony that Felder sold him cigarettes. See Division 2 (a), supra. The record shows that, before J. D. testified and outside the presence of the jury, the court granted the State's request that J. D. be given use and derivative use immunity for his testimony so that he could not be charged with a crime based upon his confession that he had possessed contraband while in the jail. The court made it very clear that the immunity did not extend to the crime at issue at trial or to any other crime, or to a perjury charge that might result if J. D. lied during his testimony. Before the jury was brought back in, Felder's counsel asked the court if he could question J. D. about the immunity during cross-examination, and the court said, "No." When the court asked counsel and the prosecutor if they had any other questions, counsel did not respond. Counsel did not argue that the immunity issue was relevant, object to the court's ruling, or pursue the matter any further.

Moreover, as discussed in Division 2 (a), supra, J. D. then testified that Felder never gave him any contraband at the jail. Following this testimony, which was clearly favorable to Felder, trial counsel asked J. D., "What do you stand to gain by testifying today?" J. D. responded "Nothing." Ultimately, counsel admitted during the new trial hearing that J. D.'s testimony was not harmful to Felder's case.

Under the circumstances, even if the alleged error was preserved for review, we find that Felder has not shown that the court abused its discretion in refusing to allow counsel to cross-examine J. D. about his limited immunity or that Felder was harmed thereby. *Johnson v. State*, 270 Ga. at 235 (2); see also *Baker v. State*, 193 Ga. App. 498, 501 (3) (388 SE2d 402) (1989) (even if court's limitation on cross-examination improperly excluded relevant evidence, defendant was not entitled to reversal of his conviction because he failed to demonstrate that the court's ruling was harmful).

4. In a related enumeration, Felder argues that the trial court erred in refusing to give a jury instruction concerning the grant of immunity to a witness. As Felder admits, however, his trial counsel withdrew his request for the charge. The record also shows that, after the court charged the jury, trial counsel affirmatively stated that he did not have any objections to the charge. Under these circumstances, the allegation that the court erred in failing to give the charge was waived. *Harris v. State*, 272 Ga. 455, 456 (2) (532 SE2d 76) (2000).

In addition, Felder has not raised on appeal an ineffectiveness claim based upon counsel's withdrawal of the request or counsel's failure to object or reserve objections to the jury charge. See Division 5, infra. Therefore, any allegation of ineffective assistance resulting from counsel's waiver of objections to the jury charge is not properly before us.

5. Felder complains that he was denied the effective assistance of counsel. He raises several alleged errors by counsel, and argues that counsel's testimony regarding these errors at the motion for new trial hearing was not credible. Both Felder and trial counsel testified at the motion for new trial hearing, and the court specifically found that counsel's testimony was credible while Felder's was not. Following the hearing, the court ruled that Felder's ineffective assistance claims lacked merit.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). Further, the determination of which witnesses to call and the extent of cross-examination are strategic and tactical decisions within the exclusive province of the attorney after consultation with the client. *McDaniel v. State*, 279 Ga. 801, 803 (2) (c) (621 SE2d 424) (2005); *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective

assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). As explained below, after reviewing the record in this case, we conclude that the trial court's factual findings and credibility determinations were not clearly erroneous and that the court did not err in concluding that Felder received effective assistance of counsel at trial. *Robinson v. State*, 277 Ga. at 75-76; *Fairclough v. State*, 276 Ga. at 606 (4).

(a) Felder argues that counsel was deficient for failing to call two jail employees as witnesses. During the motion for new trial hearing, counsel testified that he had a "thorough discussion" with Felder about the "pros and cons" of calling one of the witnesses and that, ultimately, the decision not to call her was a strategic decision he made after consulting with Felder.

> [T]he decision as to which defense witnesses to call is a matter of trial strategy and tactics; tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances.

(Citations and punctuation omitted.) *Dickens v. State*, 280 Ga. 320, 321 (2) (627 SE2d 587) (2006). See also *Hamilton v. State*, 274 Ga. 582, 589 (13) (555 SE2d 701) (2001) (accord).

Moreover, during the motion for new trial hearing, Felder failed to show that the testimony of either witness would have been relevant and favorable to his defense or that it would have changed the outcome of the trial. Neither witness testified at the new trial hearing, and Felder's testimony about what he thought the witnesses' testimony might have been was mere speculation and hearsay.

In order to show prejudice resulting from counsel's failure to call a witness, Felder "was required to offer more than mere speculation that [the witnesses] may have had evidence that would have assisted [his] case at trial." (Citation and punctuation omitted.) *Dickens v. State*, 280 Ga. at 322 (2). A defendant cannot rely on his testimony about what an uncalled witness might have said in order to establish the truth of that uncalled witness's testimony. Id. That would be hearsay, which has no probative value. Id.

> Hearsay evidence cannot be used either under the first *Strickland* prong to rebut the reasonableness of trial counsel's tactical decision or under the second *Strickland* prong to establish that the defense was prejudiced by counsel's deficient performance. Either the uncalled witness must

testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony.

(Citations and footnote omitted.) Id. "Where, as here, the defendant fails to proffer the testimony of an uncalled witness, he cannot prove that there is a reasonable probability that the trial would have ended differently." (Citation omitted.) *McDaniel v. State*, 279 Ga. at 802 (2) (c). See also *McNeal v. State*, 281 Ga. 427, 428 (2) (637 SE2d 375) (2006) (accord).

Accordingly, Felder has failed to show that counsel's failure to call the witnesses was an unreasonable trial strategy that constituted deficient performance or that he was harmed thereby. *Dickens v. State*, 280 Ga. at 321 (2); *McDaniel v. State*, 279 Ga. at 802 (2) (c). Therefore, Felder's ineffective assistance claim on this basis must fail.

(b) Felder suggests that counsel did not have time to adequately prepare for trial, and he contends that counsel was deficient when he failed to request a continuance. Counsel, however, testified that he was hired to represent Felder three or four weeks before trial and that he had adequate time to prepare for trial. According to counsel, the only benefit of having some extra time would have been that it might have allowed him to find a potential defense witness, but there was no competent evidence in the record regarding what the witness would have testified to and that it would have been relevant and favorable to Felder. Counsel also testified that, contrary to Felder's claims, he fully apprised Felder of his trial strategy and Felder was involved in the preparation of the defense. The court found that counsel's testimony on this issue was credible, while Felder's was not.

Further, Felder has failed to identify anything that might have been done differently at trial which would have been favorable to him if counsel had prepared more thoroughly or requested a continuance. Absent a showing of both deficient performance and harm, Felder's ineffectiveness claim on this basis must fail. *Robinson v. State*, 277 Ga. at 75-76.

(c) Felder complains that his trial counsel did not allow him to testify in his own defense. At the new trial hearing, however, counsel testified that he and Felder discussed at least three times whether Felder should testify at trial. During these discussions, counsel explained that testifying could be a "double-edged sword," that Felder might be vulnerable to cross-examination, and that there could be possible consequences to testifying, and counsel gave his opinion that Felder's legal interests were best served by not testifying. According to counsel, "Mr. Felder agreed that it would be in his best interest not to testify." Although Felder claimed that he wanted to testify at trial but trial counsel would not allow him to, the trial court found Felder's

testimony on this issue was not credible. The record supports a finding that counsel did not deny Felder the right to testify and that the strategic decision to advise Felder not to testify was not unreasonable. *Hamilton v. State*, 274 Ga. at 589 (13).

(d) Felder complains that counsel did not object when the State referred to him as a "dirty cop" while questioning a witness.[3] The transcript shows that, during the investigation of this case, J. D. told the prosecutor and an investigator that he had purchased cigarettes from Felder at the jail. At trial, however, J. D. claimed he had lied, and he recanted his pretrial statement. Upon further questioning, J. D. admitted that he had told an investigator the day before that he did not want to testify in the case because he was afraid of being threatened and he did not want to be labeled a "snitch." J. D. admitted that he was worried about his reputation in the prison where he was incarcerated at the time of the trial. The State then asked, "And you don't want people to believe that you came and testified against a dirty cop?" J. D. responded, "I don't want to lie on nobody." During the motion for new trial, counsel testified that he did not object to the "dirty cop" reference because the State's remark was a hypothetical question and, weighing it against the benefits of J. D.'s testimony, he did not think the remark was damaging to Felder's case. The record supports a finding that this was a reasonable strategic decision that did not amount to ineffective assistance. *Grier v. State*, 273 Ga. at 365 (4).

(e) Felder argues that counsel failed to object to the State's improper bolstering of its witness when the State elicited testimony that R. H., the inmate who had obtained the key from Felder, had testified for the State in another felony case in which it had obtained a conviction. During the motion for new trial hearing, however, counsel specifically testified that he believed the evidence that R. H. had previously assisted the State damaged R. H.'s credibility and was a "gift" that benefitted Felder. According to counsel, he wanted to portray R. H. as a "professional witness" for the State. Counsel hoped that the jury would "see through" the State's claim that R. H. did not receive any benefit or favorable treatment by testifying against Felder. Counsel explained that, if "[the jury] perceived [R. H.] as being in the State's pocket, I don't see how that would hurt my client." The record supports a finding that this was a reasonable strategic decision that did not amount to ineffective assistance. *Grier v. State*, 273 Ga. at 365 (4).

---

[3] Although Felder's brief refers to C. J., the transcript does not show that the State used the phrase while questioning that witness. Because the State used the phrase while questioning a different witness, J. D., however, we will assume that the brief's reference is a misstatement, and will review the alleged error.

280

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JULY 3, 2007.

*Dwight L. Thomas*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Layla V. Hinton, Assistant District Attorney*, for appellee.